United States District Court
Fort The District of Massachusetts

Maurice Sedwell            )
                           )
                           )
                           )
v.                         )   Civil Action Number 09-cv-11021 RGS
                           )
Lawrence P. Novak          )
                           )
                           )

## Motion for Recusal and a Motion to Strike the Proeeedings

Now comes Lawrence P. Novak pursuant to rule 60 B(6) and moves
to re-open case number 09-cv-11021 and then moves pursuant to
28 U.S.C.S. § 455(A) which provides that a judge shall disqualify
himself in any proceeding in which his impartiality might be
reasonably be questioned the statue forbids not only the reality
but its objective appearance as well.


Novak only recently learned in late February of 2013 of Judge
Richard Stearns background and his partisan involvement with the
Democrat Party thru a Freedom of Information Request to the
Massachusetts Governor's Council. Novak never knew of Judge Stearns
extensive Political background as a paid political operative for
the Democrat Party. The Official Court web-site doesn't list Judge
Stearns paid political work for the Democrat Party.


Judge Stearns is not your typical Federal Judge. He meaning
Judge Stearns was paid politcal operative of the Democrat Party.
In not one position but throw out his early working life.


Judge Stearns served in the following political position:

... Deputy Campaign Manager Presidential Campaign for George
    McGovern

... Special Assistant to Senator George McGovern

... Consultant Charter Commission Democratic National Committee

... Consultant To Dukakis Committee(Dukakis Committee sued Novak
    in his official capacity as Treasure of Massachusetts Republican
    Party.)

... Consultant to Lt. Governor Thomas O'Neil(tip O'Neil's son)

... Consultant to Durkin for Senate

... Consultant to Udall for President Committee

... Consultant Democrat State Chair Ass'n

... Consultant Andrews for Senate(Democrat candidate in Virginia)

Justice Stearns is prominently mentioned in Bill Clinton's story "My Life"

President Clinton talking about Judge Stearns stated the following

"He threw me for a loop one night when he told me I was unsuited for politics he siad Huey Long and I had great southern style, but long was a political genius who understood how to get and use political power."

Justice Stearns must recuse himself pursuant to 28 U.S.C. § 455(a) to avoid the appearance of a lack of impartiality.28 U.S.C. § 455 states any Judge of United States shall disqualify himself in any proceedings in which his impartiality might be questioned. The Court must seem to be free of Bias or prejudice see: In RE: <u>United States</u> 158 F.3rd at 30.

A judge doesn't have to be subjectively biased or prejudiced so long as he appears to be so. See: <u>Liteky v. United States</u> 510 U.S. 540, 553, N2(1994)

Novak served as vice-chairman, treasurer and state Committeeman for the Republican Party. A resonable person regarding Novak's case would doubt Justice Stearns impartiality when Judge Stearns never disclosed or put his background on the record. One must look at Justice Stearns entire employment hsitory to understand his bias. See: <u>Liljeberg v. Health Services Acquistion Corp</u>. 486 U,S. 847, 860-61(1988).

In Novak's case Justice Stearns was aware of Novak's Political background as he presided over his crime trial. Novak was active Republican Leader who served as vice chairman and treasurer of the Party and Justice Stearns was a paid political operative for the Democrat Party which Judge Stearns never disclosed in any proceedings to Novak. Must reasonable people would think Justice Stearns has a biased based on his employment history or the appearance of bias. See tha attached resume.

In Re: Bulger the first Circuit removed Justice Stearns because of his background that a reasonable person would question his impartiality.

After reading President Clinton's biography Novak filed a Freedom of Information request with the Clinton Library and the Governor's Council the Council forward Judge Stearns questionaire to Novak.Novak is still awaiting information from the Clinton library. If Novak had know of Judge Stearns background early he would have filed for recusal.

Novak's criminal case received extensive coverage in the Boston Globe, The Boston Hearld, The Brockton Enterprise and the Patriot ledger. Justice Stearns is a resident of Milton Mass. and the ledger covers Milton. When recusal is a close call which it is not in this case the first circuit has directed district court judges that balance tips in favor of recusal. See: RE: Boston Children First, 244 F3D 164, 167 (1St Cir 2001)

In Novak's case there is no possibility that Judge Stearns can avoid the appearance of partiality and his recusal was required and all action taken by Justice Stearns should be stricken and the case assigned to different Judge so it does not violate Novak 5th amendment rights and the court maintains the perception of fairness.

Respectfully Submitted

Lawrence P. Novak

## Certifaction

I, Lawrence P. Novak certify I mailed copy of my motion to strike motion for 60B and motion for Recusal to Attorney Rossi on this 8th Day of April 2013 by placing first class postage on said envelope and placing it in the internal mail box at fort dix.

Signed under the penalties of Perjurythis 8 Day of April 2013.

COMMONWEALTH OF MASSACHUSETTS
COUNCIL CHAMBER
STATE HOUSE
BOSTON, MASSACHUSETTS   02133

QUESTIONNAIRE FOR JUDICIAL NOMINEES

## I. BIOGRAPHICAL INFORMATION

1. Full name:

    Richard Gaylore Stearns

2. Addresses:

    

    (o)  United States Attorney's Office
         1107 McCormack Post Office & Courthouse
         Post Office Square
         Boston, MA 02109
         (617) 696-6729

3. Date and Place of Birth:

    

4. Citizenship

    United States

5. Education:

    (a) **Stanford University**                    1962-1964
                                                    1965-1966
                                                    1967-1968

        Degree: Bachelor of Arts (1968)

    (b) **American University of Beirut**          1964-1965

    (c) **University of Minnesota**                1966

    (d) **Balliol College, Oxford University**     1968-1970
                                                    1971
        Degree: Master of Literature (1971)

    (e) **Harvard Law School**                     1973-1976

        Degree: Doctor of Law (1976)

6. Employment history:

    (a) Deputy Campaign Manager         1970-1972
         Presidential Campaign
         Senator George S. McGovern
         Washington, D.C.

    (b) Special Assistant         1972-1973
         United States Senate
         Senator George S. McGovern
         Washington, D.C.

    (c) Consultant         1973
         Charter Commission
         Democratic National Committee
         Hon. Terry Sanford
         Washington, D.C.

    (d) Consultant         1974
         The Dukakis Committee
         Hon. Michael S. Dukakis
         Boston, MA

    (e) Law Clerk         1974-1975
         Hale & Dorr
         Boston, MA

    (f) Instructor         1974
         School of Government
         Harvard University
         Cambridge, MA

    (g) Law Clerk         1975
         Hogan & Hartson
         Washington, D.C.

    (h) Consultant         1975-1976
         Office of the Lt. Governor
         Hon. Thomas P. O'Neill III
         Boston, MA

    (i) Consultant         1975
         Christian Democratic Party
         Caracas, Venezuela

    (j) Consultant         1975
         Durkin for Senate
         Hon. John Durkin
         Manchester, NH

(k) Consultant                                        1976
    Udall for President Committee
    Hon. Morris S. Udall
    Washington, D.C.

(l) Consultant                                        1976
    Democratic State Chair Ass'n
    Democratic National Committee
    Washington, D.C.

(m) Legal Assistant                                   1976-1977
    Norfolk District Attorney's Office
    Hon. William D. Delahunt
    Dedham, MA

(n) Assistant District Attorney                       1977-1979
    Norfolk District Attorney's Office           1980-1982
    Hon. William D. Delahunt
    Dedham, MA

(o) Consultant                                        1978
    Andrews for Senate
    Hon. Hunter Andrews
    Richmond, VA

(p) Director of Delegate Selection                    1979-1980
    Kennedy for President Committee
    Senator Edward M. Kennedy
    Washington, D.C.

(q) Consultant                                        1980-1981
    Criminal Justice Training Council
    Boston, MA

(r) Assistant U.S. Attorney                           1982-1990
    U.S. Department of Justice
    United States Attorney's Office
    Boston, MA

(s) Instructor                                        1983-1988
    Clinical Program
    Harvard Law School
    Cambridge, MA

7. Military service:

    None (medically disqualified)

8. Honors and Awards:

    Alfred Sloan Scholar            Stanford University
    Exchange Scholar         American University of Beirut
    Phi Beta Kappa                  Stanford University

| | |
|---|---|
| Outstanding Thesis (History) | Stanford University |
| B.A. Great Distinction | Stanford University |
| Rhodes Scholar | Oxford University |
| Superior Performance Award | Department of Justice |
| Special Commendation Award | Department of Justice |
| Commendations | Various U.S. Agencies |

9. Professional Associations:

Massachusetts Bar Association
American Bar Association

Member, Advisory Committee on Local Rules, U.S.
District Court, Massachusetts.

Operations Committee, Economic Crime Council,
U.S. Department of Justice, 1984 --     .

First Circuit Judicial Conference, 1987, 1989.

10. Other memberships:

In 1966-1967 I served as International Vice-President
of the U.S. National Student Association in Washington,
D.C.

I served as a member of the Democratic Party's
Commission on Reform of the Presidential Nomination
Process (1976-1978) and as a member of the Technical
Advisory Committee to the Presidential Nomination
Commission (1981-1982). In 1980 I was elected by the
Massachusetts delegation to the Rules Committee of the
Democratic National Convention.

As a member of the American Council of Young
Political Leaders, I represented the United States on
State Department sponsored delegations to the Soviet
Union in 1971 and 1988 and to Japan in 1973. I chaired
delegations visiting Saudia Arabia, Sudan, Egypt and
Israel in 1979, and the Republic of China (Taiwan) and
Hong Kong in 1988 and 1989. I have also hosted a number
of ACYPL visitors to the United States.

11. Court admissions:

| | |
|---|---|
| Commonwealth of Massachusetts | (1977) |
| U.S. District Court, Massachusetts | (1977) |
| First Circuit Court of Appeals | (1983) |
| Temporary Emergency Court of Appeals | (1983) |

12. Published writings:

Massachusetts Criminal Law: A District Court
Prosecutor's Guide (9th ed., 1989).

13. Health

Excellent

14. Legal career:

(a) chronology

1976 - 1982   Norfolk District Attorney's Office

After completing the bar examination I was employed as
a Legal Assistant in the Norfolk District Attorney's
Office working primarily on appellate matters. Upon
formal admission to the Massachusetts bar, I was
appointed an Assistant District Attorney. In April of
1977 I was named Chief Prosecutor for the Quincy
District Court. In this position I prosecuted cases
and supervised the work of three other Assistants. In
January of 1978 I was transferred to the Superior Court
in Dedham and assigned to the White Collar and
Organized Crime Unit. In June of 1979 I was chosen to
organize and head the Career Criminal Unit, a federally
financed demonstration project concentrated on the
accelerated prosecution of serious chronic offenders.
With the exception of a nine month leave of absence
to work on the presidential campaign of Senator Edward
Kennedy, I served as Senior Prosecutor for the Unit,
supervising four attorneys and five support staff until
the project concluded in late 1981. I remained with the
Norfolk District Attorney's Office as a Special
Assistant District Attorney until early 1982.

1982 - 1990   United States Attorney's Office (Boston)

I joined the U.S. Attorney's Office in February of 1982
as chief of government fraud prosecutions. In 1983 I
was promoted to head the General Crimes Unit in which I
prosecuted cases and supervised the work of nine other
attorneys. In 1984, I was named Chief of the Criminal
Division, a position in which I served until the fall
of 1986. In this capacity I prosecuted cases and
supervised the work of thirty attorneys and twelve
administrative staff. In October of 1986 I was
appointed First Assistant U.S. Attorney, supervising
the work of forty-five attorneys, as well as
maintaining a normal litigation schedule. In November

of 1988 I resumed the duties of an Assistant U.S.
Attorney. In February of 1989 I was reappointed Chief of
the Criminal Division, a position I held until being
named Senior Litigation Counsel in September of 1989.

(b) nature of practice

The general character of my practice has been criminal
litigation. My typical "client" has been a police
department or, since 1982, a federal investigative
agency. My legal specialties include the law of search
and seizure, Massachusetts criminal law generally,
contracting and procurement fraud, export violations,
theft of trade secrets, espionage, and terrorism.
Between 1986 and 1989 my practice included a small
civil component.

(c) court appearances

My entire practice has been court oriented. Prior to
1982, I appeared almost daily in the District and
Superior Courts of Massachusetts. I also appeared on
occasion before the Court of Appeals. Since 1982 I have
appeared regularly in the United States District Court
for Massachusetts and the First Circuit Court of
Appeals. Prior to 1982, my litigation experience was
entirely criminal. Since 1982 my litigation experience
has been at least ninety percent criminal.

15. Judicial office:

Not applicable

16. Other public office:

In 1967 I was appointed by the U.S. Secretary of State
to a three year term on the United States National
Commission for UNESCO. I was subsequently invited to
serve as an advisor to the American delegation to the
UNESCO General Conference in Paris in 1968.

In 1980 I was elected as a Massachusetts member of the
Rules Committee of the Democratic National Convention.

17. Business or other occupation:

(a) Prior to, and during law school, I was employed as
a manager or consultant in various political campaigns.
I also served on the staff of the U.S. Senate. The
dates and details of this employment are specified in
the answer to question 6.

(b) I am the managing partner of a partnership doing
business as the Massachusetts Prosecutor's Guide,

P.O. Box 1333, Dedham, MA 02026. The partnership was created in 1981 to publish and distribute a book I had writtten (and continue to write) on Massachusetts criminal law. I own 70 percent of the partnership. The remaining partners are William T. Hogan III, Esq. (5 percent) and Susan R. Hogan (25 percent).

## II. GENERAL INFORMATION

1. Dissolution of law firm:

   Not applicable

2. Tax status:

   All of my taxes, federal, state and municipal, are current as of the date of this statement.

3. Sentencing philosophy:

   My principal concern in sentencing would be the protection of the public consistent with a theory of just deserts. A judge, in my view, has an obligation to respect society's judgments of right and wrong as articulated by its elected legislators.

   I have no objection to receiving legislative guidance as to the community sense of an appropriate range of sentence for a given crime. To some extent the Legislature does this at present by classifying crimes as felonies or misdemeanors, by specifying maximum and minimum sentences, or in some cases, mandatory sentences. Based on my experience with the federal sentencing guidelines, I think it would be a mistake to make that guidance rigidly binding. I would not oppose permitting the Commonwealth the right now accorded defendants to appeal a sentence it felt an abuse of discretion.

4. Judicial compensation:

   Yes. Investment in the Commonwealth's court facilities and the efficient provision of judicial services are more immediate issues.

5. Supplemental income:

   I intend to maintain authorship of my book on Massachusetts criminal law. I have no plans to hold any other position, although I would accept compensation for writing and teaching to the extent permitted by the constraints of judicial duty.

6. Other considerations:

     Although I have worked for the past nine years as a federal prosecutor, I have never lost interest in Massachusetts law, and point with some pride to the fact that my treatise on Massachusetts criminal law, which has been updated yearly, is now used not only by prosecutors, but by most District Court Justices and Magistrates and by a substantial portion of the criminal defense bar. My major deficiency is lack of significant civil experience. However, the challenge of immersing myself in a new area of law is one of the most appealing aspects of sitting in the Superior Court.

L   a   w   r   e   n   c   e   P.   N   o   v   a   k

Clerk's Office
United States District Court
1 Court Houseway
Boston, Ma 02110


Re: Civil Action 09-cv-11021-RGS


Dear Sir,

   Enclosed please find a 60B Motion and a motion for Recusal and
a motion to strike the proceeding with attachments.


   Thank you for your consideration in this matter.


                                   Sincerely Yours,



                                   Lawrence P. Novak
                                   Reg, No: 25796-038
April 8, 2013                      Fort Dix/ Camp
                                   Fort Dix, New Jersey 08640